Scileppi, J.
Defendant was convicted of possession of a dangerous weapon as a felony after a motion to suppress was denied prior to trial.
The pertinent facts establish that on December 5, 1967, at approximately 2:45 p.m., Patrolman Beedenbender was directing traffic at a school crossing in Manhattan when he observed three men, the defendant and two others, riding in an automobile bearing Virginia license plates. The officer recognized the defendant, the driver, since he had previously arrested the defendant for a narcotics offense. Although that charge was later dismissed, the officer became acquainted with the defendant’s prior criminal record and knew “ there was a warrant [dated Feb. 1,19651 — a hold on him from the 28th police squad, New York City * * * the hold was for 1308 of the Penal Law ”, With this knowledge, the officer followed the defendant in the patrol car and, at a stop light, emerged from his car, approached the vehicle and asked the defendant to pull around the corner and park in front of the 30th precinct station house. The defendant complied and after arriving at the station house, *550 the officer inspected the defendant’s license and registration, which he found to be in order, and then took him into the precinct to see if the warrant was still outstanding. Inside, the defendant was taken up to the Detective Squad on the second floor where the officer telephoned the Manhattan South Warrants Squad. Learning that the warrant ‘ ‘ was still in force and effect ’ ’, the officer placed the defendant under arrest. After advising the defendant of his rights, the officer then took the defendant back downstairs to his vehicle in which his companions were still seated. The officer then “ proceeded to search the vehicle ”, and under the front seat of the driver’s side, found and removed a loaded .45 caliber revolver. The officer then took the other two occupants of the vehicle back into the precinct and arrested them for possession of the weapon.
The officer testified that the reason for making the search of the vehicle without either an arrest or search warrant 10 minutes after the defendant had been taken into custody was the recognized police practice “to search both the defendant and any vehicle that he may occupy ” after he is placed under arrest.
The defendant offered no evidence and the motion to suppress was denied.
On appeal, notwithstanding the District Attorney’s concession of error, the Appellate Division affirmed, one Justice dissenting. In answer to the argument that the search could not be sustained as an incident to the arrest because of the lack of contemporaneousness, the court stated (33 A D 2d 195): “We conclude that on the record before us, there is revealed a sufficient unity of time and pláce, attendant upon the defendant’s arrest to justify the search ”. The District Attorney has again conceded error in our court, however, this alone does not mandate a reversal. As was stated in Sibron v. New York (392 U. S. 40, 58): “ Confessions of error are, of course, entitled to and given great weight, but they do not ‘ relieve this Court of the performance of the judicial function. ’ Young v. United States, 315 U. S. 257, 258 (1942).”
Any discussion of the problem of the search of the vehicle without a warrant sometime after a defendant has been placed under arrest must necessarily commence, with Preston v. United States (376 U. S. 364). In Preston three men who had been *551 seated in a parked car for several hours were arrested for vagrancy. Although the defendants were immediately searched for weapons, they were taken to the police station without any search having been made of the car. From the scene of the arrest, the car was driven by one of the officers to the station house from which it was later towed to a garage. Soon after the defendants had been booked, the officers went to the garage to search the vehicle and found two loaded revolvers in the glove compartment. Unable, however, to open the trunk, they returned to the station house where one of the officers was told to go back to the garage and try to get into the trunk. The officer did so and found several instrumentalities to commit crime. In holding that the search could not be sustained as an incident to the arrest, the court stated: “ The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime — things which might easily happen where the weapon or evidence is on the accused’s person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. Agnello v. United States, supra, 269 U. S., at 31. Here, we may assume as the Government urges, that, either because the arrests were valid or because the police had probable cause to think the car stolen, the police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place. See Stoner v. California, post, p. 483. The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could' have used any weapons in the car or could have destroyed any evidence of a crime assuming that there are articles which can be the 1 fruits ’ or ‘ implements ’ of the crime of vagrancy.” (supra, pp. 367-368; emphasis added).
Likewise in the instant case, at the time of the defendant’s *552 arrest on the second floor of the station house, there was absolutely no danger that he would use a weapon concealed in the car to injure one of the officers or to effect an escape.* Therefore, the warrantless search cannot be sustained on the theory of self-protection.
Of course, the justification for searches incident to a valid arrest are not only borne out of protection for police officers, but are also conducted for the purposes of discovering (1) the fruits of the crime; (2) instrumentalities used to commit the crime; (3) contraband, the possession of which constitutes a crime; or (4) material which constitutes evidence of the crime or evidence that the person arrested has committed it (Amador-Gonzalez v. United States, 391 F. 2d 308); and this is especially true when involved with warrantless searches of automobiles “ where it is not practicable to secure a warrant because the vehicle can bé quickly moved out of the locality or jurisdiction in which the warrant must be sought ” (Carroll v. United States, 267 U. S. 132, 153). This is not to say, however, that incidental searches can be made to further the four purposes set forth above without foundation. There must exist a reasonable belief that the search will produce the fruits, instrumentalities, contraband or evidence (Carroll v. United States, supra, at p. 154). Here, the only basis for the arrest was an outstanding warrant dated almost three years before the arrest. All the arresting officer knew was that the defendant was still wanted in connection with a charge of criminally receiving stolen property prior to February 1,1965. Without more, the search cannot be sustained as an incident to the arrest, since the officer could not formulate the requisite reasonable belief that the search would be productive.
It must be emphasized, however, that it is not the mere 10-minute lapse of time between the arrest and search which gives rise to our disposition, for we have on several occasions sustained searches of automobiles sometime after the arrest (e.g., People v. Cassone, 14 N Y 2d 798 and People v. Montgomery, 15 N Y 2d 732, where the car itself was seized as an *553 instrumentality or as evidence, of the crime). Rather it is the lack of any justification to make the search after the 10 minutes had elapsed which brings about the result herein.
Accordingly, the judgment of conviction should be reversed and the indictment dismissed. •
Chief Judge Fuld and Judges Bergan, Breitel, Jasen and Gibson concur; Judge Burke taking no part.
Judgment reversed and indictment dismissed.

 Of course, the question of whether the officer had probable cause to arrest the defendant and make an incidental search when he first confronted him (without the knowledge of the continued viability of the 1965 warrant) is academic since no search was made at that time.