**UNITED STATES of America, Plaintiff,**

v.

**Ernest Joseph FLORACK and John Clayton Walls, Defendants.**

**No. 93–CR–84L.**

United States District Court,
W.D. New York.

April 21, 1994.

Bradley E. Tyler, Asst. U.S. Atty., Rochester, NY, for plaintiff.

Lawrence Andolina, Harris, Beach & Wilcox, Jonathan W. Feldman, Federal Public Defender, Rochester, NY, for defendants.

## DECISION AND ORDER

LARIMER, District Judge.

On January 21, 1994, defendants filed a motion to strike the suppression hearing testimony of Gates Police Officer John Schraml. The Government failed to file a written opposition to the motion and, because of that failure, Magistrate Judge Kenneth R. Fisher, to whom the motions had been referred, re-

fused to allow the Government to argue the motion and he granted defendants' motion based on the Government's default.

Thereafter, the Government moved pursuant to Fed.R.Crim.P. 12(f), "for reconsideration and/or reopening" of the proceedings concerning defendants' motion to strike.

In a Decision and Order/Report and Recommendation, filed March 25, 1994, Magistrate Judge Fisher granted the motion for reconsideration, vacated his prior order granting defendants' motion to strike and, on the merits, denied defendants' motion to strike the testimony of Officer Schraml. On April 12, 1994, defendants jointly filed objections to Magistrate Judge Fisher's Report and Recommendation.

▇▇▇ In essence, there are two decisions of Magistrate Judge Fisher that are challenged on this appeal. The first matter is his decision to reopen or reconsider his prior oral order granting the motion to strike because of the Government's failure to file a written response to the motion. This matter does not require a Report and Recommendation but involves a matter referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(A). The Magistrate Judge's decision to reconsider or reopen may be appealed to the referring District Judge who may "reconsider" the matter if the appellant shows that the Magistrate Judge's order was clearly erroneous or contrary to law. No such showing has been made here. A court always has broad power to reconsider or reopen matters determined and, under the circumstances of this case, it was well within the Magistrate Judge's discretion to reconsider or reopen the prior proceedings which precipitated his oral decision. Defendants have failed to show that that action by Magistrate Judge Fisher was clearly erroneous or contrary to law and, therefore, I affirm the decision of Magistrate Judge Fisher to reopen and reconsider the proceedings concerning defendants' motion to strike testimony.

Magistrate Judge Fisher issued his Report and Recommendation, on the merits, to deny defendants' motion to strike the testimony of Officer Schraml. Defendants also challenged the Magistrate Judge's decision denying a hearing on the matter. I have carefully considered Magistrate Judge Fisher's Report and Recommendation on this issue, and I accept and affirm his findings and recommendations.

I agree with Magistrate Judge Fisher that defendants have failed to show any colorable suppression of evidence or other due process violation. The Government has represented, by affidavit, that the Gates Police Department did not tape communications with its dispatcher and defendants have submitted no evidence to put that fact in issue. Therefore, there is no basis for a hearing. As Magistrate Judge Fisher points out, in his Report and Recommendation, there is no right for a defendant to insist on a factual hearing in all cases. Defendants have failed to advance any basis to establish a due process violation.

### *CONCLUSION*

Magistrate Judge Fisher's decision to reopen and to reconsider his prior oral decision of February 18, 1994 and his decision to vacate that order is affirmed.

Magistrate Judge Fisher's Report and Recommendation entered March 25, 1994, recommending that defendants' motion to strike the suppression hearing testimony of Officer John Schraml be denied is accepted and affirmed. Defendants' motion to strike the testimony of Officer John Schraml is in all respects denied.

IT IS SO ORDERED.

### DECISION AND ORDER and REPORT AND RECOMMENDATION

FISHER, United States Magistrate Judge.

The government moves "pursuant to Rule 12(f) of the Federal Rules of Criminal Procedure, for reconsideration and/or reopening of the proceedings which concern the defendants' motion to strike the suppression hearing testimony of Gates police officer John Schraml." The defendants have filed a joint reply affirmation of each defense counsel opposing the government's motion for reconsideration and/or reopening. The following is the court's Decision and Order granting the government's motion for reconsideration and

vacating the oral order granting defendants' motion to strike the suppression hearing testimony of Gates police officer John Schraml. This is also my Report and Recommendation that defendants' motion to strike (i.e., suppress Schraml's testimony) be denied. The court directs the filing of briefs within two weeks of today's date in connection with the underlying motion to suppress, in accordance with the request of the defendants, unless objections are filed.

A thorough consideration of the background is necessary to understand the court's decision. Charged by an indictment with unlawful possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g) and 26 U.S.C. § 5861(d), defendants moved to suppress the firearm and ammunition on the ground of a violation of their Fourth Amendment rights. A suppression hearing was held on December 15, 1993, at which the court took the testimony of Officer Schraml. Decision is pending. Prior to the conduct of the hearing, defendants sought to subpoena records of the Gates Police Department concerning defendants' arrest, and in particular the transcript or tape of the Gates Police Department dispatcher's office on the date in question. After litigation concerning whether such an application for a Rule 17 subpoena can be made on an *ex parte* basis, *United States v. Florack*, 838 F.Supp. 77 (W.D.N.Y. 1993), the subpoena was issued and a return made by the Gates Police Department.

When the suppression hearing was held, defendants represented to the court that the dispatcher tapes and transcripts were not included within the materials supplied in response to the subpoena by the Gates Police Department. Defendants reserved their right to make an application directed to the absence of such transcripts and tapes. Defendants sought an opportunity to establish whether the tapes or transcripts were in existence at the time the original application for the Rule 17 subpoena was made, but somehow were destroyed or became unavailable between that time and the time the suppression hearing was conducted. This factual scenario was posited as one of many which might call for some relief from the court. The court granted defendants the

right to make any motion directed to the non-production of the dispatch tapes or transcripts, and went ahead with the conduct of the hearing.

Defendants then moved to suppress Officer Schraml's testimony, or in the alternative for an order of suppression of the shotgun, on the ground that they were denied evidence which was necessary in order to be adequately prepared for the suppression hearing. The motion was supported by the affidavit of Florack's counsel, who explained that the purpose of the Rule 17 subpoena directed to the Gates Police Department was "to produce documentary evidence relevant and necessary in order to prepare for the suppression hearing, including Officer Schraml's daily activity log for the date of the arrest [which was produced], all tape recordings or transcripts of any dispatches to Officer Schraml on the date of the arrest, all transcripts of any radio communications Officer Schraml to the Gates Police Department dispatch on the date of the arrest any Gates Police Department communication logs or dispatch logs for the date of the arrest." Andolina affidavit at ¶ 5 (sworn to January 21, 1994). The affidavit claimed that this "documentation was necessary in order for the defendants to be adequately prepared for the suppression hearing." *Id.* at ¶ 15. Ultimately, defendants claimed that "their constitutional right to due process" was violated by reason of the following:

> It is respectfully submitted that had the subpoena duces tecum been issued upon defendant's initial application on July 1, 1993, defendants may have been able to obtain the transcripts of any and all radio communication between Officer Schraml and the dispatcher, which documents would have been extremely important in the defendants' preparation for the suppression hearing. The questioning at the hearing would have been more pointed and directed had said evidence been available.

Andolina affidavit at ¶ 17. Nothing more was alleged in the motion to strike.

The government did not respond to the motion, notwithstanding that the relief requested would have gutted the bulk of the government's proof at the hearing. Govern-

ment counsel sent a telephone message to my Courtroom Deputy that a written response would not be made. When the matter came on to be heard at oral argument, defense counsel pointed out the lack of any response by the government, and requested that the motion to strike be granted on that basis alone. The court granted the motion to strike, pointing out that the government had waived any defense to the motion by failing to respond. The court also refused to take oral argument in connection with the motion because the government had not filed a response to the motion.

Invoking Fed.R.Crim.P. 12(f), the government now moves for reconsideration of the motion to strike. In its motion for reconsideration, the government offered as an excuse for not filing a response only that "counsel for the government decided not to respond, due to the fact of not being a participant until the conclusion of the *legal issue* in the defendants' application to obtain the Rule 17 subpoena, and not being aware of the subpoena's contents until the suppression hearing itself." Tyler affirmation at ¶ 8. The government reasoned that "no allegation of misconduct" was "directed to counsel for the United States or the Gates Police Department" in defendants' motion to strike, and that the government viewed the motion as implicating, only, the failure of the court to issue the Rule 17 subpoena "back in the summer of 1993." *Id.* at ¶ 9. The government stated: "As a consequence, counsel for the United States viewed the motion as a matter strictly between the Court and the defendants, and therefore no response was filed to this motion to strike." *Id.*

The government also included in its motion for reconsideration a defense on the merits of the motion to strike. The government contends that the original motion to strike failed to allege any government misconduct, and further that it failed to indicate "what if any prejudice resulted from the failure to receive all the requested materials." *Id.* at ¶ 11. Government counsel also alleged, for the first time, that he "ha[s] been advised by a representative of the Gates Police Department that back in September of 1992 [the time the shotgun and ammunition were seized], that

department was not participating in the Monroe County 911 system, rather relying [sic] upon their own dispatcher whose communications *were not taped.*" Tyler Sur Reply Affirmation at ¶ 2 (emphasis in original). Government counsel allowed as to the possibility that the 911 system within the Monroe County Public Safety Building may have been monitoring and taping the communications of the Gates Department[,]" but its inquiry directed to Monroe County had not been met with a reply. *Id.* at ¶ 2. The government has not as of this date revealed whether a reply by Monroe County was made, but in any event it appears from a review of the file that defendants did not direct a Rule 17 subpoena to the Monroe County officials maintaining records of the 911 system.

### A. *Whether under Rule 12(f) adequate cause has been shown to reopen the matter*

Rule 12(f) provides that a "[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c) [setting a hearing date in connection with pretrial motions], or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." Fed.R.Crim.P. 12(f). The Advisory Committee Note "makes clear that the defendant and, *where appropriate, the government* have an obligation to raise the issue at the motion date set by the judge pursuant to subdivision (c)." Fed.R.Crim.P. 12(f) (advisory committee note) (emphasis supplied). The court has uncovered four cases in which Rule 12(f) has been invoked against the government, one of which has been affirmed by the Second Circuit. *United States v. Reyes,* unpublished, 1993 WL 8775 (W.D.N.Y. January 13, 1993), *aff'd. without opinion,* 999 F.2d 536 (2d Cir.1993); *United States v. Andrews,* 764 F.Supp. 1252 (N.D.Ill.1991); *United States v. Ramos,* 753 F.Supp. 75 (W.D.N.Y.1990); *United States v. Head,* 737 F.Supp. 1287 (W.D.N.Y.1990). Three of

these decisions involve a government motion for reconsideration after the court granted a motion to suppress evidence. In each the government attempted to raise an issue which had not been raised during the original suppression hearing. In each, the court held that the government essentially was estopped pursuant to Rule 12(f) from raising the arguably meritorious defense to the motion to suppress.

Illustrative is *United States v. Reyes,* in which Judge Skretny was faced with a motion to suppress cocaine seized from the defendant at the Amtrak terminal. The government defended the motion to suppress on the ground that the defendant's initial encounter with law enforcement agents at the Amtrak terminal was consensual and thus did not have to be supported by reasonable suspicion. The government further contended that defendant's responses to the initial and consensual conversation between her and the law enforcement agents yielded reasonable suspicion to believe that the defendant violated immigration laws, and that therefore a *Terry* stop was authorized. Although the district court agreed that the initial questioning of defendant was consensual, and that a *Terry* stop was authorized, it went on to hold that the *Terry* detention became an unauthorized full arrest once the agents placed defendant in the patrol car. Because the government did not argue that probable cause supported the arrest, the court granted defendant's motion to suppress the cocaine as the fruit of an unlawful arrest. When the government moved for reconsideration, contending that probable cause existed and that in any event the continued detention of the defendant was a lawful administrative detention, Judge Skretny held that these arguments were barred by Rule 12(f). The fact that the court did not accept the government's initial argument that only a *Terry*

stop had occurred, which demanded only reasonable suspicion to support it, did not constitute cause within the meaning of Rule 12(f) for the court to grant to the government relief from the waiver. The other cited cases (*Andrews* being excepted) pretty much follow this formula.[1]

■ This court also finds, if it is "appropriate" to invoke Rule 12(f) against the government in this case, that insufficient cause has been alleged by the government to excuse its failure to defend the motion. The motion asked for relief which would directly impact the state of the government's proof at the suppression hearing and which would, if granted, quite possibly lead to the issuance of a suppression order. The fact that the motion to strike did not allege misconduct on the part of federal governmental agents, but rather seemingly involved what the government considered was a dispute that the defendants had with the court's initial reluctance to issue the subpoena duces tecum, did not relieve the government of the obligation to defend the motion to strike. The motion should have been defended on the basis of information yielded by reasonable and diligent inquiry, namely information which belatedly was provided in the government's sur reply affirmation, that the Gates Police Department never made any tapes or transcripts which would have been responsive to the subpoena. Similarly, the motion alleged a violation of defendant's due process rights and asserted that the relief of suppression or of striking Officer Schraml's testimony was a required result. When such motions as this which directly implicate the course of a federal governmental prosecution are made, they obviously and naturally demand a response from the government which (1) details all facts which reasonably diligent governmental investigation would reveal on the subject of the motion, and (2) set forth the government's position whether defendant's motion has any legal merit. Thus, the gov-

---

1. *Andrews* involved a different situation, not really related to the issue here. In that case, the government and the district court had a number of pretrial skirmishes concerning the admissibility of racketeering evidence, which the govern-

ment wished to clear up prior to its opening statement at trial. The district court believed that the government's motion was untimely. The case is *sui generis* and has no application here.

ernment's excuse that the motion seemed to be directed to a matter of complaint that the defendants had against this court rings rather hollow and appears quite lame. This case is an example of what the court has often referred to as the failure in this district to take motion practice in criminal cases seriously.

### B. *Whether it is "appropriate" to invoke Rule 12(f)'s waiver provision against the government*

■ In the peculiar circumstances of this case, however, the court does not view it "appropriate," within the meaning of the Advisory Committee Note to Rule 12(f), to invoke that rule against the government. The fact of the matter is that defendants' motion to strike was insufficient on its face in both fact and law to warrant the relief sought. In each of the above cited cases which invoked Rule 12(f) against the government (*Andrews* aside, see fn. 1, *supra*), the defendant was entitled to the relief of suppression in the absence of the defense belatedly proffered by the government. The motions to suppress, in other words, stated a claim upon which relief could be granted. Otherwise, a hearing would not have been ordered by the court. In this case, defendants' motion to strike did not allege in any concrete way that (1) transcripts or tape recordings of any dispatches to Officer Schraml, or any radio communications from him to the dispatcher on September 15, 1992, actually were made (but only alleged that the Gates Police Department "claimed not to be in possession of any [such] transcripts or tape recordings"), (2) did not allege further that such transcripts or tape recordings were destroyed by any individual if indeed they existed, (3) did not claim that, if they existed and were destroyed, that they existed at the time of the original application for the Rule 17 subpoena but were destroyed thereafter, (4) did not allege whether the contents of such transcripts or radio communications, if once in existence, would have been materially favorable to defendants' cross examination of Schraml sufficient to make out a cognizable claim of preju-

dice under the due process clause, and (5) failed to allege facts from which it may be determined whether, if the transcripts or recordings existed, they were destroyed by the Gates Police Department in bad faith or, to indulge defendants' theory of the motion, whether the court's initial denial of the subpoena on an *ex parte* basis was intended to deny defendants potentially exculpatory evidence. *Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). *See also, California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (exculpatory value of the destroyed evidence must be apparent at the time of the destruction before a due process violation is stated).

■ Routine administrative destruction of potentially exculpatory evidence, which necessarily is in good faith because of its routine nature, does not violate the constitution unless the "evidence ... possess[es] an exculpatory value that was apparent before the evidence was destroyed, and ... [was] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984). Defendants' motion papers do not begin to establish either condition of a due process claim. *See also, United States v. Morgenstern*, 933 F.2d 1108, 1116 (2d Cir.1991); *United States v. Moldonado–Rivera*, 922 F.2d 934, 954–55 (2d Cir.1990); *United States v. Sommer*, 815 F.2d 15, 16–17 (2d Cir.1987); *United States v. Millan*, 817 F.Supp. 1072, 1084–85 (S.D.N.Y.1993). Nor do defendants make out a due process violation by reference to the timing of the ultimate decision of the court to issue the subpoena. *Cf. United States v. Sommer*, 815 F.2d at 17 (failure of prosecutor to inquire sooner concerning the transcription of grand jury minutes, i.e., before the court reporter lost them). Accordingly, it cannot be said that defendants' original motion to strike stated a claim under the due process clause upon which relief might be granted.[2]

---

**2.** There is authority for the proposition that dispatch tapes of the kind defendants allege existed

here is not discoverable and would not provide a ground for suppressing an agent's testimony if

**56**

■ There is an old and venerable rule that a party's "[c]onfessions of error are, of course, entitled to and given great weight, but they do not 'relieve this court of the performance of the judicial function,'" *Sibron v. New York*, 392 U.S. 40, 58, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968) (quoting *Young v. United States*, 315 U.S. 257, 258, 62 S.Ct. 510, 511, 86 L.Ed. 832 (1942)). *See also, Torres v. Commonwealth of Puerto Rico*, 442 U.S. 465, 471 n. 3, 99 S.Ct. 2425, 2429 n. 3, 61 L.Ed.2d 1 (1979) ("even an explicit concession on this point would not 'relieve this Court of the performance of the judicial function' of deciding the issue"); *People v. Lewis*, 26 N.Y.2d 547, 550, 311 N.Y.S.2d 905, 260 N.E.2d 538 (1970). Although this principle is most often applied at the appellate level, the import of the rule for district courts is that a waiver of defenses under Rule 12(f) does not excuse the court from determining the legal sufficiency of a motion on the facts alleged by the movant. In this case, unlike *Reyes, Ramos,* and *Head,* discussed above, defendants' motion to strike was legally insufficient even on a view of the facts alleged most favorable to them. Therefore, this case is not "appropriate" for application of the Rule 12(f) waiver, as the term "appropriate" is used in the advisory committee note to that Rule. In other words, because of the insufficiency of defendants' motion papers, there was nothing for the government to waive. The motion for reconsideration is therefore granted.

**C.  *The Merits of the Motion to Strike***

For the reasons stated above, it is my report and recommendation that defendant's motion to strike on due process grounds be denied on the merits. Defendants do not state, much less establish a factual basis for, a colorable due process violation. The defendants have suggested at oral argument, however, that their motion papers are sufficient to require the court to hold a hearing on the issue of whether the tapes existed.

■ It is well settled that a defendant does not have a right to a hearing under all circumstances. *See United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir.1969), *cert. denied*, 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510 (1970); *United States v. Viscioso*, 711 F.Supp. 740, 745 (S.D.N.Y.1989). Instead, the defendant must show "'that disputed issues of material fact exist before an evidentiary hearing is required.'" *Viscioso*, 711 F.Supp. at 745 (quoting *United States v. Castellano*, 610 F.Supp. 1359, 1439 (S.D.N.Y. 1985)). *Cf. United States v. Pena*, 961 F.2d 333, 339 (2d Cir.1992). Furthermore, the required showing must be made by an affidavit of someone with personal knowledge of the underlying facts. *United States v. Gillette*, 383 F.2d 843, 848 (2d Cir.1967); *Viscioso*, 711 F.Supp. at 745; *see also, United States v. Vasta*, 649 F.Supp. 974, 986 (S.D.N.Y.1986) ("to raise a factual issue ... such that a hearing is required, the defendant must support his claim with an affidavit based on personal knowledge"). Similarly, a hearing is not required if defendant's statements "are general, conclusory or based on conjecture." *Viscioso*, 711 F.Supp. at 745 (citing *Castellano*, 610 F.Supp. at 1439).

■ In *Gillette*, the Second Circuit affirmed the district court's denial, without a hearing, of the defendant's suppression motion, the basis of which was an attorney's

destroyed. *United States v. Bobadilla–Lopez*, 954 F.2d 519 (9th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 987, 122 L.Ed.2d 139 (1993). This case, however, is an interpretation of the *Jencks* Act which does not appear to be supportable under Second Circuit case law. In *United States v. Bufalino*, 576 F.2d 446 (2d Cir.1978), *cert. denied*, 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978), the court held that undercover investigation tapes "constitute *Jencks* Act material if they included statements by a govern-

ment witness and were recorded at the government's instigation." *Id.*, 576 F.2d at 449 (adding that "both Rule 16 and the Jencks Act entitled the defense to examine the taped material"). This court sees no functional difference between undercover investigation tapes recorded at the government's instigation which contain prior statements of a government witness and dispatch tapes which similarly contain a government witness's statements. Accordingly, the court declines to follow *Bobadilla–Lopez.*

affidavit. The Court of Appeals stated that "[t]he affidavit submitted for appellant is insufficient in that it does not ... allege personal knowledge on the part of appellant's attorney; accordingly there was no factual issue to be resolved and the denial of a hearing was correct." *Id.,* 383 F.2d at 848. *See also, United States v. Culotta,* 413 F.2d 1343, 1345 (2d Cir.1969), *cert. denied,* 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510 (1970). There may be circumstances in which reliance on an attorney's affidavit may be proper, *United States v. Feola,* 651 F.Supp. 1068, 1120 (S.D.N.Y.1987) ("relying on the good faith of Gumpricht's attorney and in the interests of justice, this Court will exercise its discretion and grant the hearing"), *aff'd,* 875 F.2d 857 (2d Cir.1989), *cert. denied,* 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). But the allegations of counsel in this case, which do not report conversations had with witnesses or make any specific reference to counsel's investigation which might support the motion or otherwise suggest the actual existence of the tapes, are insufficient to state either of the two elements of the due process violation articulated above and alleged only in conclusory terms in defendants' papers. *Id.,* 651 F.Supp. at 1118–19 (insufficiency of defendant's moving papers to controvert government's representation that no confession existed).[3] *See also, id.,* 651 F.Supp. at 1120 (district court need not hold hearing unless the "'moving papers state sufficient facts which, if proved would have required the granting of relief requested by appellant'") (quoting *United States v. Culotta,* 413 F.2d at 1345). For these reasons, it is my Report and Recommendation that the motion to strike be denied.

**CONCLUSION**

The foregoing is the court's Decision and Order granting the government's motion for reconsideration, and vacating the oral order granting defendants' motion to strike the suppression hearing testimony of Gates Police Officer John Schraml. This is also my Report and Recommendation that defendants' motion to strike (i.e., suppress Schraml's testimony) be denied. The court directs the filing of briefs within two weeks of today's date in connection with the underlying motion to suppress, in accordance with the request of the defendants, unless objections are filed.

The parties should be on notice that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 30(a)(3), any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt thereof. Failure to file objections within the specified time waives the right to appeal a District Court Order adopting this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a) and 6(e); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993) (10 day period excludes Saturdays, Sundays and legal holidays, and is extended for an additional three days where service is by mail); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992), *cert. denied,* ——— U.S. ———, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions

---

**3.** For example, government counsel's sur reply affirmation alleging that no tapes were ever made by Gates Police would satisfy this standard because they report conversations had with Gates personnel. No issue of fact is presented concerning the tapes' existence because defendants haven't sufficiently alleged that tapes were indeed made by the Gates Police. But although the motion to strike could well be denied on the ground that the government's allegation of nonexistence is unrefuted, I find above that defendants' motion is legally insufficient in any event to state a due process violation.

of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Dated: Rochester, New York
March 25, 1993